IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAROLD DEAN WHITEHEAD,
   Plaintiff,

    v.

JOHN BLEAKLEY RV CENTER,
INC., et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-468-TWT

ORDER

This is an action for breach of warranty. It is before the Court on the Motion for Summary Judgment of Defendants Winnebago Industries, Inc., John Bleakley RV Center, Inc., and Bank of the West [Doc. 44]. For the reasons set forth below, the Court GRANTS the Defendants' Motion.

I. Background

This action arises out of the sale of a motorhome. On January 19, 2005, John Bleakley RV Center, Inc. sold Harold Whitehead a 2004 Winnebago 33V. The sale occurred at Bleakley's dealership in Douglasville, Georgia. Bleakley sold the motorhome to Whitehead for about $135,000. Whitehead traded in his old motorhome for a $35,000 credit and agreed to installment payments for the remaining

$100,000. Bleakley later assigned its rights to the installment payments to Bank of the West. As the manufacturer, Winnebago Industries, Inc. issued Whitehead its standard "2004 New Vehicle Limited Warranty." This warranty provided that "[a]ny part of the vehicle subject to warranty which is found to be defective in material or workmanship, will be repaired or replaced at Winnebago Industries' option upon notice of the defect without charge to the customer for parts or labor." (Mot. for Summ. J. of Defs. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, Ex. 8, at 2.) Bleakley also arranged for Whitehead to buy a service contract from Warranty Support Services, LLC. The service contract provided additional coverage for defective parts.

Whitehead says that there were immediate and ongoing problems with his new motorhome. Among other things, he says that there were problems with the slideouts, air conditioning, jacks, batteries, and gas tank. He says that he took the motorhome to Bleakley for repairs at least fifteen times between 2005 and 2007, but Whitehead kept having problems with the motorhome. Whitehead believed that the motorhome was defective. Sometime in 2005, Whitehead asked Bleakley to give him another 2004 Winnebago, but Bleakley refused. (Whitehead Dep. at 76-77.) On August 6, 2007, his attorney wrote Bleakley and Bank of the West a letter revoking acceptance

of the motorhome. Bleakley and Bank of the West have not honored Whitehead's revocation.

This prompted Whitehead to seek legal recourse. On January 10, 2008, Whitehead filed an action against Bleakley and Winnebago in the Superior Court of Fulton County. Whitehead asserted claims for breach of warranty and breach of the duty of good faith. But Whitehead apparently never followed up on his claims. On April 17, 2008, the Superior Court of Fulton County dismissed the action for failure to prosecute. (Mot. for Summ. J. of Defs. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, Ex. 4.)

On February 20, 2009, Whitehead filed this action against Bleakley, Winnebago, Warranty Support Services, and Bank of the West. In his Complaint, the Plaintiff asserted claims for (1) breach of an express warranty, (2) breach of the implied warranty of merchantability, (3) violations of the Magnuson-Moss Warranty Act, (4) revocation of acceptance, (5) violations of the Georgia Fair Business Practices Act, (6) breach of the duty of good faith, (7) breach of the service contract, and (8) liability under the Federal Trade Commission (FTC) Holder Rule. All of the parties agree that Georgia law applies to the Plaintiff's state law claims. On December 11, 2009, the Plaintiff agreed to dismiss with prejudice its claims against Warranty Support Services, and the other Defendants also agreed to dismiss with prejudice their

cross claims against Warranty Support Services. (Stipulation of Dismissal with Prejudice of Defendant Warranty Support Services, LLC, at 1.) The remaining Defendants now move for summary judgment on all of the Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

A.   Breach of Express Warranty

The Plaintiff says Winnebago breached its "2004 New Vehicle Limited Warranty." This warranty provided for repair or replacement of defective parts. To recover for breach of a repair or replace warranty, a plaintiff must first show there is or was a defect. See McDonald v. Mazda Motors of Am., Inc., 269 Ga. App. 62, 65 (2004). The plaintiff must also show the person who made the warranty had "notice of the defect and a reasonable opportunity to repair the defect...." Id. "Thus the warranty is not instantly breached if the product is found on delivery or at some time thereafter within the warranty period to have a defective part or operational deficiency." Ford Motor Co. v. Gunn, 123 Ga. App. 550, 551 (1971). "[I]t is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty." Id.

The Plaintiff says that the motorhome has three current defects. (Whitehead Dep. at 41.) First, he says that the slideouts are defective. Slideouts are a feature that extend the walls of a motorhome to increase the space of the living quarters. They usually extend and retract using hydraulic rams or electric gears. The Plaintiff testified during his deposition that, sometime in July 2007, he used the slideouts to extend the walls, but later he could not fully retract the slideouts. (Whitehead Dep. at 27-28.) It left a gap of "[c]lose to an inch." (Id. at 29.) The Plaintiff, however, is not qualified to say this small gap is a defect. A plaintiff must present expert

testimony if the "defect [would not] be understood by the reasonable juror." Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004). "The average juror likely has little knowledge of or experience with motorhome slide-outs and, therefore, would be unlikely to know whether a small alignment gap is a . . . defect." Id. "[A]bsent expert testimony concerning such things as the proper functioning of motor home slide-outs or industry standards for slide-out alignment, a defect in the slide-out cannot be inferred from the presence of a small gap." Id. The Plaintiff has not presented any expert testimony.

Even if he could show the slideouts are defective, the Plaintiff did not give notice of this defect to Winnebago. The Plaintiff admitted in his deposition that he never had a problem retracting the slideouts before and he never asked for a repair:

> Q. And [it] first appeared in 2007 that [the slideouts] didn't go all the way in?
> A. Yes, sir.
> Q. And before that, you believe that both slide-outs fully retracted; is that correct?
> A. Do I believe they came all in?
> Q. They both came all the way in, right. Before you noticed that for the first time in 2007; that one of them didn't come in an inch at the bottom right corner?
> A. Yes, they've always came in.
> Q. Did you return the motor home to John Bleakley's after you noticed that the slide wasn't retracting about an inch on the lower right-hand corner?
> A. No, sir.

(Whitehead Dep. at 29.)

The Plaintiff says that he had already notified Winnebago about problems with the slideouts. But that involved different problems with the slideouts. The Defendants had also fixed each of those problems. On April 24, 2006, the Plaintiff took the motorhome to Bleakley because the slideouts were "inoperable." The repair history states Bleakley repaired the problem and that the slideouts are "working ok @ this time." (Id., Ex. 15, at 2.) Over a year later, on June 25, 2007, the Plaintiff took the motorhome to Bleakley because the slideouts were "inoperable." The repair history states that Bleakley repaired the problem by replacing a "bad pump relay soelnoid [sic] and pump motor" and that the slideouts are "working at this time." (Id., Ex. 18, at 4.) Neither of these repairs gave Winnebago notice that the Plaintiff could not fully retract the slideouts. Indeed, the Plaintiff himself said that they "always came in" before. (Id. at 29.) Without proper notice, the Plaintiff cannot recover for breach of warranty.

Second, the Plaintiff says that the batteries are defective. He testified during his deposition that, sometime after July 2007, the batteries stopped holding a charge. (Id. at 33-34.) But the Plaintiff did not give notice of this problem to Winnebago. The Plaintiff admitted in his deposition he never asked for a repair. "Q. And then as to the [motorhome] batteries not holding a charge, you have not brought that to Winnebago or Bleakley's attention, have you? A. No, sir." (Whitehead Dep. at 42.)

The Plaintiff says that he had already notified Winnebago about problems with the batteries. But he only did this once. See Hines v. Mercedes-Benz USA, LLC, 358 F. Supp. 2d 1222, 1231 (N.D. Ga. 2005) ("Though diagnosis and repair of defects in the first instance is ideal, clearly, such is not required under the terms of the warranty, which only promises that repairs will be corrected within a reasonable time."). The Defendants had also fixed the problem. On May 17, 2005, the Plaintiff took the motorhome to Bleakley because the batteries would "not hold a charge for more than 1-2 days." (Whitehead Dep., Ex. 11, at 1.) The repair history states that Bleakley repaired the problem and that the motorhome "starts ok." (Id., Ex. 11, at 5.) The Plaintiff admitted in his deposition that the batteries worked:

> Q. When you received the motor home back in May of 2005, the engine batteries were fixed and the DVD player was fixed; is that right?
>     MR. BOWEN: I'm going to object to the form of the question. It
>     assumes facts not in evidence.
> BY THE WITNESS: (Resuming)
> A. The DVD player was fixed. The battery, I changed it myself.
> Q. So that was fixed then, right?
> A. Yeah. The battery cost me nothing because it was warranteed [sic]. And I just found another one that it ran the same kind of batteries that was in it.

(Whitehead Dep. at 61.) This repair did not give Winnebago notice that, two years later, the batteries stopped holding a charge. Without proper notice, the Plaintiff cannot recover for breach of warranty.

Third, the Plaintiff says that the air conditioning is defective. He testified during his deposition that, sometime after July 2007, the air conditioning would not work while the motorhome was plugged into an electrical outlet. (Id. at 30-32.) But the Plaintiff did not give notice of this problem to Winnebago. The Plaintiff admitted in his deposition that he never asked for a repair. "Q. And as to the air-conditioning unit not operating while plugged into an electrical outlet at your house, you have not brought that to the attention of John Bleakley or Winnebago, have you? A. No, sir." (Whitehead Dep. at 42.) Without proper notice, the Plaintiff cannot recover for breach of warranty.

In response, the Plaintiff says that he did not ask for repairs to these current problems because he had already taken the motorhome to Bleakley for repairs at least fifteen times between 2005 and 2007. He says that the number of repairs shows the motorhome was defective. But Georgia law focuses on "the number of attempts required to fix each defect as it arose." Knight v. American Suzuki Motor Corp., 272 Ga. App. 319, 323 (2005). It does not focus on "the number of attempts required to fix the vehicle as a whole." Id. Looking at each problem as it arose, the evidence shows the Defendants fixed each problem within one or two attempts. For example, on February 18, 2005, the Plaintiff took the motorhome to Bleakley because the fresh water pump would not stop running. The repair history states that Bleakley fixed the

problem by explaining to the Plaintiff that the "fill valve . . . should be in the 'city' position." (Whitehead Dep., Ex. 7, at 3.) The Plaintiff did not report any additional problems with the fresh water pump. As another example, in November 2006, the Plaintiff took the motorhome to a Workhorse Custom Chassis, LLC dealership because he was having acceleration and stalling problems. (Whitehead Decl. ¶ 12.) The Plaintiff says that Workhorse found trash in the gas tank and fixed the problem by replacing the gas tank. The Plaintiff did not report any additional problems with the gas tank. Because the Plaintiff has not presented sufficient evidence that Winnebago breached its "2004 New Vehicle Limited Warranty," Winnebago is entitled to summary judgment on the Plaintiff's claims for breach of an express warranty.

B. Breach of Implied Warranty

The Plaintiff says that Bleakley and Winnebago breached the implied warranty of merchantability. Georgia law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind." O.C.G.A. § 11-2-314(1). "This warranty protects consumers from defects or conditions existing at the time of sale." Dildine v. Town & Country Truck Sales, Inc., 259 Ga. App. 732, 734 (2003). To recover for breach of the implied warranty of merchantability, a plaintiff must show that there was a

defect, that the defect existed at the time of sale, and that the defect made the product unmerchantable.  See id.

The Plaintiff says that the motorhome had three defects at the time of sale. First, he says that the gas tank was defective at the time of sale.  He says that, in November 2006, he took the motorhome to a Workhorse dealership because of acceleration and stalling problems and they found trash in the gas tank.  He says that "the logical conclusion is that the trash was in the gas tank when [he] purchased the [motorhome]."  (Pl.'s Br. in Opp'n to the Mot. for Summ. J. of Def. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, at 16.)  But that is not a reasonable inference from the evidence.  The fact that the Plaintiff did not experience acceleration and stalling problems until November 2006, more than nineteen months after he purchased the motorhome, suggests that the trash was not in the gas tank at the time of sale.  It suggests that the trash got into the gas tank much later.  Because if there really were trash in the gas tank at the time of sale, then the Plaintiff should have had acceleration and stalling problems soon after he purchased the motorhome.

Second, the Plaintiff says that the jacks were defective at the time of sale. When slideouts are used to extend the walls of a motorhome, the jacks help keep the slideouts level and steady.  The Plaintiff says that, on February 11, 2005, less than one

month after he purchased the motorhome, the jacks were "inoperable." He says that, because this problem happened so soon after he had purchased the motorhome, a reasonable inference is the jacks were defective at the time of sale. But that is not a reasonable inference from the evidence. Even though the Plaintiff had the motorhome for less than one month, the repair history states that he had already driven the motorhome over 1,000 miles. (Whitehead Dep., Ex. 6, at 3.) It also states that the jacks were inoperable because the "control box [had a] burnt smell." (Id., Ex. 6, at 2.) Bleakley replaced the control box, and the jacks worked again. (Id.) Inferring the jacks were defective at the time of sale based on this evidence is speculation. See Simpson v. Hyundai Motor Am., Inc., 269 Ga. App. 199, 205 (2004); Jenkins v. General Motors Corp., 240 Ga. App. 636, 637 (1999). The evidence does not provide any real indication of when the problem occurred or what caused the problem with the control box. It could have been a defect at the time of sale or it could have been something that happened during the first 1,000 miles. Furthermore, because the Defendants fixed the problem under the warranty, the problem did not make the motorhome unmerchantable. Cf. McDonald, 269 Ga. App. at 66 ("If the defect can be cured, then the purchaser has what he bargained for, i.e., 'a product which would pass in the trade,' because there has been no breach of warranty.").

Third, the Plaintiff says that the batteries were defective at the time of sale. He says that, on May 17, 2005, he took the motorhome to Bleakley because the batteries would "not hold a charge for more than 1-2 days." (Whitehead Dep., Ex. 11, at 1.) He says that, because this problem happened so soon after he had purchased the motorhome, a reasonable inference is the batteries were defective at the time of sale. But that is not a reasonable inference from the evidence. The repair history states that, by May 17, 2005, the Plaintiff had already driven the motorhome over 3,000 miles. (Id., Ex. 11, at 1.) It also states that Bleakley repaired the problem and that the motorhome "starts ok." (Id., Ex. 11, at 5.) Inferring the batteries were defective at the time of sale based on this evidence is speculation. See Simpson, 269 Ga. App. at 205; Jenkins, 240 Ga. App. at 637. The evidence does not provide any real indication of when the problem occurred or what caused the problem. It could have been a defect at the time of sale or it could have been something that happened during the first 3,000 miles. Furthermore, because the Defendants fixed the problem under the warranty, the problem did not make the motorhome unmerchantable. Cf. McDonald, 269 Ga. App. at 66.

Even if the Plaintiff could show the motorhome had a defect at the time of sale, and that such defect made the motorhome unmerchantable, the Plaintiff could not assert an implied warranty claim against either Bleakley or Winnebago. The Plaintiff

could not assert an implied warranty claim against Bleakley because, in the purchase contract for the motorhome, Bleakley disclaimed all warranties:

> Warranty Information – See Manufacturer's Written New Car Warranty. Any warranties on the products sold hereby are those made by the manufacturer. The Seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty or merchantability for fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with sale of said products.

(Mot. for Summ. J. of Defs. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, Ex. 7, at 2). The Plaintiff says that Bleakley could not disclaim any warranties because it entered into a service contract with the Plaintiff. See 15 U.S.C. § 2308; Freeman v. Hubco Leasing, Inc., 253 Ga. 698, 703 (1985). But Warranty Support Services, not Bleakley, entered into the service contract with the Plaintiff. The service contract states that "Warranty Support Services LLC" is the "Issuing Provider" of the service contract. (Whitehead Dep., Ex. 21, at 2.) Even the Plaintiff has said that "Bleakley arranged the sale of a service contract." (Pl.'s Br. in Opp'n to the Mot. for Summ. J. of Def. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, at 18) (emphasis added).

The Plaintiff also could not assert an implied warranty claim against Winnebago because there is no privity between the Plaintiff and Winnebago. Under Georgia law, a warranty of merchantability "clearly arises out of a contract of sale of

goods [and] can only run to a buyer who is in privity of contract with the seller." Chaffin v. Atlanta Coca Cola Bottling Co., 127 Ga. App. 619, 619 (1972). The Plaintiff purchased the motorhome from Bleakley, not Winnebago. See Monticello v. Winnebago Indus., 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (similar facts); Bailey, 350 F. Supp. 2d at 1047 (rejecting the argument that "privity should be inferred from the fact that [the manufacturer] extended [the plaintiff] a written warranty"). Because the Plaintiff has not presented sufficient evidence that Bleakley or Winnebago breached the implied warranty of merchantability, and because the Plaintiff cannot assert an implied warranty claim against either Defendant, the Defendants are entitled to summary judgment on the Plaintiff's claims for breach of the implied warranty of merchantability.

  C. Magnuson-Moss Warranty Act

The Plaintiff says that Bleakley and Winnebago violated the Magnuson-Moss Warranty Act. The Magnuson-Moss Warranty Act provides consumers with a right of action against a person who fails "to comply with any obligation under . . . a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d). For ordinary breach of warranty claims, the Magnuson-Moss Warranty Act "calls for the application of state written and implied warranty law, not the creation of additional federal law." Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986); see

also Bailey, 350 F. Supp. 2d at 1042 ("Only full warranties are required to meet the minimum standards set forth in [the Magnuson-Moss Warranty Act]."). As set forth above, the Plaintiff has not presented sufficient evidence that Bleakley or Winnebago breached any express or implied warranties under Georgia law.

The Magnuson-Moss Warranty Act also imposes certain disclosure requirements on manufacturers and suppliers. See 15 U.S.C. § 2302; Bailey, 350 F. Supp. 2d at 1040. Although the Plaintiff alleged in his Complaint that the Defendants failed "to provide the required warranty information and service contract information," the Plaintiff has since abandoned this claim. (Compl. ¶ 26.) In the Motion for Summary Judgment, the Defendants presented evidence that the "Plaintiff received all of the warranty and service contract information but merely failed to read it." (Mot. for Summ. J. of Defs. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, at 14-15.) The Plaintiff did not respond to this evidence or even discuss his claim for inadequate disclosure in his response brief. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims for violations of the Magnuson-Moss Warranty Act.

D. Revocation of Acceptance

The Plaintiff says that Bleakley and Bank of the West have wrongfully denied his revocation of acceptance. Georgia law provides that a buyer may revoke acceptance of nonconforming goods under certain conditions:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

O.C.G.A. § 11-2-608. "Whether goods are nonconforming requires reference to the terms of the contract and to the law of warranty. In other words, if the goods are as contracted for and as warranted, they cannot be nonconforming." Cissell Mfg. Co. v. Park, 36 P.3d 85, 89 (Colo. Ct. App. 2001) (citations omitted). As set forth above, the Plaintiff has not presented sufficient evidence that Bleakley breached any term of the contract or any warranty. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims for revocation of acceptance.

E.  Georgia Fair Business Practices Act

The Plaintiff says that Bleakley and Winnebago violated the Georgia Fair Business Practices Act. The Georgia Fair Business Practices Act prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). It provides consumers with a right of action for violations of this prohibition. O.C.G.A. § 10-1-399. The Plaintiff says "[t]he unfair and deceptive practices . . . are the failure to fix the problems with the [motorhome] and the wrongful denial of [the] Plaintiff's revocation of acceptance." (Pl.'s Br. in Opp'n to the Mot. for Summ. J. of Def. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, at 13.) As set forth above, the Plaintiff has not presented sufficient evidence that Bleakley or Winnebago failed to fix problems with the motorhome or wrongfully denied the Plaintiff's revocation of acceptance. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims for violations of the Georgia Fair Business Practices Act.

F.  Breach of Duty of Good Faith

The Plaintiff says that Bleakley and Winnebago breached the duty of good faith. Georgia law provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." O.C.G.A. § 11-1-203. The Plaintiff says if he "can establish a breach of warranty claim and/or revocation of

acceptance, [then he also] has a viable claim for breach of duty of good faith." (Pl.'s Br. in Opp'n to the Mot. for Summ. J. of Def. Winnebago Indus., Inc., John Bleakley RV Center, Inc., and Bank of the West, at 19). As set forth above, the Plaintiff has not presented sufficient evidence that Bleakley or Winnebago breached any warranty or wrongfully denied the Plaintiff's revocation of acceptance. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims for breach of the duty of good faith.

G.   Breach of Service Contract

The Plaintiff says that Warranty Support Services breached the service contract. But the Plaintiff has since dismissed with prejudice its claims against Warranty Support Services. The Plaintiff does not assert this claim against any of the other Defendants.

H.   FTC Holder Rule

The Plaintiff says that under the FTC Holder Rule, Bank of the West is liable for any claims that the Plaintiff has against Bleakley and Winnebago. See 16 C.F.R. § 433.2. As set forth above, the Plaintiff does not have any viable claims against Bleakley and Winnebago. Therefore, Bank of the West is entitled to summary judgment on the Plaintiff's claim for liability under the FTC Holder Rule.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Motion for Summary Judgment of Defendants Winnebago Industries, Inc., John Bleakley RV Center, Inc., and Bank of the West [Doc. 44].

SO ORDERED, this 8 day of March, 2010.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge